IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-03481-CBS

JESSE ALBERT MILLS,
  Plaintiff,
v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
  Defendant.

## MEMORANDUM OPINION AND ORDER

  This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social Security's final decision denying Mr. Mills's application for Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") benefits.  Pursuant to the Order of Reference dated September 1, 2015, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. # 18).  The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.   Procedural History

Mr. Mills filed applications for SSDI and SSI benefits on November 30, 2011 and April 25, 2012, respectively.[1] (*See* Administrative Record ("Tr.") (Doc. # 8) at 129-140, 182). He claimed that he became disabled on May 15, 2011. (Tr. 129, 154). His claims were denied on February 21, 2012 and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 63, 77-80, 83-84). ALJ William Musseman held a hearing on May 14, 2013. (Tr. 34-61). Mr. Mills was represented by counsel and testified at the hearing. (*Id.*). Daniel B. Best testified at the hearing as a Vocational Expert ("VE"). (Tr. 58-61, 117-19). The ALJ issued his written decision on June 10, 2013, concluding that Mr. Mills was not disabled within the meaning of the Act. (Tr. 19-28). On July 1, 2013, Mr. Mills sought review of the ALJ's decision. (Tr. 15). The Appeals Council received additional evidence and on May 8, 2014 denied his request for review. (Tr. 1-4). Mr. Mills filed this civil action on December 29, 2014. (*See* Doc. # 1). The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

II.   Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted). *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings. SSI pays benefits to people with disabilities whose income and resources are below set limits. Benefits payable under Title II (SSDI) are based on earnings history and are generally higher than those for Title XVI (SSI). There are also restrictions and exclusions attached to Title XVI that are not attached to Title II. Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level. Regulations for Title II are found at 20 C.F.R. §404; those for Title XVI are found at 20 C.F.R. §416.

supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.    Analysis

An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); § 1382c(a)(3)(B). The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams*, 844 F.2d at 750-52

(describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* at 750–51.

If a claimant's impairment does not meet or equal a listed impairment, the evaluation proceeds to step four, where the Commissioner assesses a claimant's Residual Functional Capacity (RFC), 20 C.F.R. §§ 404.1520(e), 416.920(e), and the claimant must establish that he does not retain the RFC to perform his past relevant work. *Pipkins v. Colvin*, No. CIV-14-136-RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015). The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments; the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. At step four of the five-step analysis, "a claimant's RFC is measured against the physical and mental demands of the claimant's past relevant work to determine whether the claimant can resume such work." *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
>     If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted). The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999). "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work." *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

The ALJ determined that Mr. Mills: (1) had not engaged in substantial gainful activity since the alleged onset date of disability, May 15, 2011, (2) had as severe impairments "right leg amputation below the knee and diabetes," (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), and (4) did not have the RFC to perform his past relevant work as a printer. (Tr. 21-23, 26-27). The ALJ determined that Mr. Mills had the RFC to perform sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can

5

only perform jobs allowing him to sit with no foot or leg controls with his right lower extremity. (Tr. 23). The ALJ relied on the testimony of the VE to reach his decision at step five that Mr. Mills could perform sedentary work with certain limitations. (Tr. 58-61). The ALJ concluded that Mr. Mills was not disabled. (Tr. 28). Mr. Mills alleges that the ALJ: (1) "failed to properly weigh the opinions from treating physician Dr. Smith," (2) erred by finding that he has no severe mental impairments, and (3) failed to properly evaluate his credibility. (*See* Doc. # 11 at 11-32 of 33).

A.   Weight Assigned to Treating Physician Opinion

Mr. Mills alleges that the ALJ erred by failing to give controlling weight to Dr. Patrick Smith's opinion set forth in the "Multiple Impairment Questionnaire" form. (Tr. 296-303). The ALJ reviewed the record and determined that Dr. Smith's opinion was not well-supported by his own clinical findings, significant clinical or laboratory abnormalities, or the other substantial evidence in the record. (Tr. 26). "A treating physician's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted). *See also Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record.") (citations omitted)). Even if the treating source opinion is not given controlling weight, it must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. *Id.*

Mr. Mills was 44 years old on the alleged date of onset of disability and thus considered a "younger individual." (*See* 20 C.F.R. § 404.1563, Tr. 31).  He is divorced after a five-year marriage and lives with his mother.  (Tr. 272).  He completed the tenth grade.  (Tr. 38).  He worked as a printer for approximately 23 years.  (Tr. 272).  He has not worked since he was laid off from his job on April 23, 2010, when his employer moved the company to Wisconsin.  (Tr. 272).

On May 16, 2011, Mr. Mills had an amputation of his right leg below the knee of a dysvascular and necrotic right foot due to longstanding poorly controlled diabetes.  (Tr. 204-253).  His "[w]ound was healing nicely" when he received clearance to go home.  (Tr. 205).  At post-operative appointments, it was noted that he was making good progress, had no new complaints, and was experiencing no pain or swelling.  (Tr. 258-259, 292).  At a post-operative appointment, a lower limb prosthesis evaluation was performed.  (Tr. 314-321).  Mr. Mills had healed from his surgery and was ready for a prosthetic fitting.  (Tr. 259, 321).  His functional level assessment indicated that he had the ability or potential to ambulate with variable cadence and perform activities beyond simple locomotion, including navigating uneven surfaces and stairs.  (Tr. 315-316).  His expected type of activities included walking for one mile daily.  (Tr. 316).  He had normal strength and range of motion and tolerated the evaluation without incident or problem.  (Tr. 316, 320).  He was not assigned any work, school, or activity restrictions.  (Tr. 254, 259).  While he had some problems with the fit of his prosthesis, he was able to put it on "without issue" and was satisfied with it.  (Tr. 254, 266, 290, 311-312).

Dr. Smith saw Mr. Mills only twice.  On November 11, 2011 Dr. Smith found Mr. Mills doing "very well" and that "his blood sugars seemed to be within appropriate limits."  (Tr. 289-290, 309).  The record shows that in October and November of 2011, Mr. Mills's "wound

7

look[ed] great," his blood sugars were "in good control." (Tr. 254, 289-290, 292). Dr. Smith encouraged him "to find some sort of daily exercise." (Tr. 290). On March 16, 2012, Dr. Smith noted that Mr. Mills had reported lower back pain since his amputation, which was "[m]ost likely . . an adjustment from different way of walking." (Tr. 282). One day earlier, Mr. Mills "was on his scooter, and it tipped over backwards onto him" and his back pain was slightly worse. (Tr. 282, 309). Mr. Mills was not taking any pain medication, as he "claims to have run out of all his medications except for his insulin." (Tr. 282). He was having "a slight amount of pain at the stump site of his right leg which is the same as always" and he believed "that his prosthetic is not adjusted well." (Tr. 282-283). Mr. Mills reported "that he was not controlling his diabetes as well as it needed to be" and Dr. Smith continued the same diabetes medication. (Tr. 309). The only clinical examination findings in March 2012 were tenderness at his amputation site and tenderness with reduced range of motion in his lower back. (Tr. 281-83, 285-90). (Tr. 281-83, 309-310).

On or about April 29, 2012, Dr. Smith prepared a Multiple Impairment Questionnaire of Mr. Mills's ability to do work-related physical activities. (Tr. 296-303). Dr. Smith set forth physical limitations that included sitting no more than four hours in an eight-hour workday, standing/walking no more than one hour in an eight-hour workday, lifting/carrying up to 10 pounds frequently and up to 20 pounds occasionally, and only minimal limitation in his ability to use his finger/hands for fine manipulations. (Tr. 298-99). He opined that Mr. Mills must get up and move around hourly for five minutes, would be precluded from grasping, turning, twisting objects or using his arms for reaching bilaterally, and would need to avoid wetness and pushing, pulling, kneeling, bending, or stooping. (Tr. 298-300). He also opined that Mr. Mills would sometimes need to take an unknown number of unscheduled breaks, would miss work more

8

than three times a month, and cannot do a full time competitive job on a sustained basis.  (Tr. 301-02).

In August of 2012, it was noted in the medical record that Mr. Mills had a reduced range of motion due to his back pain.  (Tr. 338).  His stump had healed with no sign of infection.  (Tr. 338-339).  "It was suggested to the patient that he should get his prosthesis refitted."  (Tr. 339).  When walking with the prosthesis, "his gait and station are within normal limits."  (Tr. 338).  His "fasting morning blood sugars have been less than 130" and he was due for diabetic tests.  (Tr. 338-339).  In March of 2013, Mr. Mills was seen for follow up.  (Tr. 329-330, 332-334).  He had chronic back pain for which he occasionally took pain medication.  (Tr. 333-334).  He had not been taking his insulin for eight months or checking his blood sugars.  (Tr. 329).  Medications for his diabetes were resumed and test strips and needles were prescribed.  (Tr. 330).  Review of his systems revealed no abnormalities.  (Tr. 329).

The record reflects that the ALJ considered Dr. Smith's medical opinion and gave good reasons for not giving the opinion controlling weight.  The permissible reasons largely concerned the degree to which the medical opinion was unsupported by objective evidence and the inconsistency between the opinion and the record as a whole. *See* 20 C.F.R. §§ 404.1527(d)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  First, because Dr. Smith saw Mr. Mills on only two occasions, he did not have a "longitudinal treatment relationship" and his opinion could properly be given less weight.  *See* 20 C.F.R. § 404.1527(c)(2)(i)(more weight given to opinion from a medical source who has a longer treatment history with the claimant and who has seen the claimant numerous times); *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (designation of "treating" "requires a relationship of both duration and frequency").  Second, Dr. Smith's own reports do not contain

9

sufficient objective medical findings to support the limitations he set forth. See 20 C.F.R. § 404.1527(c)(3)(more weight given to an opinion from a medical source who supports his opinion with evidence, "particularly medical signs and laboratory findings"). Dr. Smith made no findings that support his opinion that Mr. Mills could only sit for four hours total in an eight-hour workday, could not use his arms or hands, and would miss work at least three times per month. (Tr. 293-303). Finally "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted). *See also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence). The minimal clinical examination findings in Dr. Smith's treatment notes do not support his opinion. (Tr. 281-283). Nor does the evidence that post-dates Dr. Smith's opinion support the opinion. The ALJ gave Dr. Smith's opinion no weight because it was not supported by the clinical and laboratory diagnostic outcomes performed by him or other medical professionals, and inconsistent with other evidence in the record, reasons that are recognized as legitimate. *Pilgrim v. Apfel*, 215 F.3d 1337 (10th Cir. 2000). The court finds no error on this issue.

B.  Mental Impairments

Mr. Mills alleges that the ALJ erred in determining that he did not have mental impairments. (*See* Doc. # 11 at 14-15 of 19). "A 'mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.' " *Lankford v. Colvin*, 612 F. App'x 496, 499-500 (10th Cir. 2015) (quoting 20 C.F.R. §§ 404.1508). "Ultimately, the outcome of the case depends on the

10

demonstration of the functional limitations of the disease or impairment . . . ." *McKean v. Colvin*, No. 1:13-CV-2585, 2015 WL 1201388, at * 7 (M.D. Pa. Mar. 16, 2015) (citations omitted).

Jonathan Lipson, PhD conducted a consultative psychological examination on February 8, 2012.  (Tr. 271-276).  He opined that Mr. Mills's work-related abilities were moderately to markedly impaired regarding relationships and simple instructions and tasks and markedly to extremely limited regarding complex instructions and tasks.  (Tr. 275).  He further opined that

> From a psychological perspective, his ability, without assistance, to obtain productive employment is markedly impaired.  His ability to perform activities with a schedule, maintain attendance, and be punctual is markedly impaired for simple tasks and extremely impaired for complex tasks.  His ability to maintain employment, adapt to the work environment, tolerate the stressors of the work environment, and complete a normal workday is markedly impaired.  His ability to perform work activities without special or additional supervision is markedly impaired.

(Tr. 275).[2]  The ALJ gave the consultant's opinions little weight because "he was not a treating physician with a longitudinal history to support his conclusions, his limitations are an overestimate, he only saw the claimant for a brief one time examination, and it is not supported by the overall medical and functional evidence in the record."  (Tr. 22).

As the ALJ recognized, the consultant's opinion "was internally inconsistent because the limitations he assessed did not comport with his exam findings."  *Lankford*, 612 F. App'x at 498.  The consultant reported that Mr. Mills does not have problems with understanding, following written or spoken directions, getting along with others, memory, or attention.  (Tr. 273-274).  Nor is the consultant's opinion consistent with the other evidence in the record.  Mr. Mills manages his personal care with some minor help from his mother, watches television, makes simple meals, takes care of his dog, washes dishes, and is able to care for his niece and nephews at home twice per week.  (Tr. 164-167, 179, 272).  He goes outside a few times a month, goes

---

[2] To the extent the consultant assessed Mr. Mill's ability to work, such opinion is not binding, because the determination of a claimant's disability status is reserved to the Commissioner. *Lankford*, 612 F. App'x at 499 (citation omitted).

shopping for personal items and diabetic supplies, and paints occasionally. (Tr. 165-166, 272). He is able to manage his own finances. (Tr. 166, 276). He needs no special reminders, has no problems with attention, authority figures, getting along with others, or following instructions. (Tr. 168-169). While he has reported feeling depressed, he has not received treatment from a mental health provider. (Tr. 176, 271-272, 274, 290). His lack of participation in therapeutic treatment is a legitimate factor to be considered in evaluating the severity of his alleged mental limitations. *Foy v. Barnhart*, No. 04-7103, 139 F. App'x 39, 43 (10th Cir. June 29, 2005) (citation omitted). Mr. Mills did not list any mental health condition among the impairments he claimed limited his ability to work. (Tr. 138). The record is consistent with the ALJ's determination that Mr. Mills had only mild limitations in activities of daily living, social functioning, maintaining concentration, persistence, or pace, and no episodes of decompensation of an extended duration. (Tr. 22). The court concludes that the ALJ's determination that Mr. Mills did not suffer from a severe mental impairment is supported by substantial evidence in the record. The court finds no error on this issue.

C.  Credibility

The ALJ concluded that Mr. Mills's complaints were not fully credible as to the intensity, persistence, and limiting effects of his symptoms. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotation marks and citation omitted). Mr. Mills argues that the ALJ's credibility determination is not supported by substantial evidence. (*See* Doc. # 11 at 16-17 of 19).

12

Mr. Mills testified on May 14, 2013 that he does nothing, spends most of his time laying down between his bed and his couch, he has spasms and shooting pain at level eight on a scale of one to ten and spasms in both of his legs three for four times per day that lasts for 45 minutes to an hour no matter what position he is in, he has constant pain in his back, and that he does not sleep much at night due to pain. (Tr. 41, 48-49, 55-56, 161). The ALJ discounted Mr. Mills's description of the severity and disabling effect of his symptoms based on the lack of medical evidence to support the reported symptoms and discrepancies between his statements and the medical evidence.

Mr. Mills's description of the severity and disabling effects of his symptoms was not consistent with the other substantial evidence in the record. He testified that he can walk half a block before he gets out of breath, that he can sit for 20 to 30 minutes, that he can stand for 10 to 15 minutes, and that he can frequently transfer from sitting to standing. (Tr. 42-44, 49, 57-58, 161). (*See also* Tr. 164-169, 179, 272, 276 (he goes outside a few times a month, goes shopping for personal items and diabetic supplies, paints occasionally, manages his own finances, manages his personal care with some minor help from his mother, watches television, makes simple meals, takes care of his dog, washes dishes, is able to care for his niece and nephews at home twice per week, needs no special reminders, has no problems with attention, authority figures, getting along with others, or following instructions). Mr. Mills's description of the severity and disabling effects of his symptoms were not consistent with Dr. Smith's opinion that he could sit for four hours in an eight-hour workday, stand or walk one hour in an eight-hour workday, lift or carry up to 10 pounds frequently and up to 20 pounds occasionally, had only minimal limitation in his ability to use his fingers or hands for fine manipulations, and must get up and move around hourly for five minutes. (Tr. 298-99). Mr. Mills testified that he takes pain

medication as little as possible, "maybe one a day." (Tr. 42). *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988) ("ALJ can weigh and evaluate numerous factors in determining the credibility of pain testimony," including "the levels of medication and their effectiveness"). Mr. Mills also received unemployment compensation insurance benefits from 2010 to May of 2012. (Tr. 57). While the receipt of unemployment benefits is not a *per se* bar to the receipt of social security disability benefits, the ALJ is not precluded from considering that factor in making a credibility determination. *See Moses v. Astrue*, No. 10-cv-02824-REB, 2012 WL 1326672, at *3 (D. Colo. April 17, 2012) ("[I]n order to receive unemployment benefits, plaintiff was required to affirm that he was willing and able to work. Such affirmations are inconsistent with claims of disability and thus negatively impact a claimant's credibility.") (citations omitted). In sum, substantial record evidence supports the ALJ's credibility determination. The court finds no error on this issue.

IV.   Conclusion

The Commissioner's determination that Mr. Mills is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude that Mr. Mills was not disabled within the meaning of Titles II and XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his or her own attorney fees and costs.

DATED at Denver, Colorado, this 26th day of February, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge